COURT OF COMMON PLEAS
FOR THE STATE OF DELAWARE
WILMINGTON, DELAWARE 19801

**ALEX J. SMALLS**
CHIEF JUDGE

August 31, 2018

Stephanie Dumpson
448 Stella Drive
Hockessin, DE 19707
*Pro se Plaintiff*

Wayne Dumpson
448 Stella Drive
Hockessin, DE 19707
*Pro se Plaintiff*

Adelle Diggs
4300 Frederick Ave., Apt. 414
Baltimore, MD 21229
*Pro se Defendant*

Kimberly Jackson
4 Winchester Road, Apt. C
Newark, DE 19713
*Pro se Defendant*

RE:   *Stephanie and Wayne Dumpson v. Adelle Diggs*
        **C.A. No. CPU4-18-000574**
RE:   *Stephanie Dumpson v. Kimberly S. Jackson*
        **C.A. No. CPU4-18-000587**

Dear Mr. and Mrs. Dumpson, Ms. Diggs, and Ms. Jackson:

On August 15, 2018, trial was convened in the Court of Common Pleas and the Court reserved its decision. In case #000574, Plaintiff Stephanie Dumpson ("Plaintiff Stephanie") and Plaintiff Wayne Dumpson ("Plaintiff Wayne") (collectively "Plaintiffs") claim that Defendant Adelle Diggs ("Defendant Diggs") defamed Plaintiff Wayne and her daughter, Plaintiff Stephanie, in both spoken and written word, as well as intentionally causing extreme emotional distress. In case #000587, Plaintiff Stephanie claims that her daughter, Defendant

Kimberly Jackson ("Defendant Jackson"), defamed her in both spoken and written word. Regarding Defendant Diggs, Plaintiffs claim they suffered "emotional distress in the form of Anguish, Humiliation, loss[s] of Productivity, los[s] of Sleep, pain and suffering, and Fear."[1] Likewise, Plaintiff Wayne claims he suffered "mental anguish as a 3rd party witness."[2] Plaintiffs are seeking compensatory damages for pain and suffering caused by Defendant Diggs' intentional infliction of emotional distress and $5,000 in punitive damages plus interest and court costs for their suffering.[3] Regarding Defendant Jackson, Plaintiff Stephanie claims she has suffered "Anguish, Humiliation, los[s] of Productivity, los[s] of Sleep, and Fear."[4] Plaintiff Stephanie is seeking $5,000 in punitive damages plus interest and court costs for her suffering.[5]

At trial, the Court heard testimony in this consolidated matter from Master Corporal Mark Grajewski, a police officer with the New Castle County Police Department; Plaintiff Wayne; Plaintiff Stephanie; Defendant Diggs; Defendant Jackson; and Antoinette Jackson, Plaintiff Stephanie's sister. Relevant to the claims before the Court,[6] the following exhibits were entered into evidence in support of Plaintiffs' claims: (1) a text message from Defendant Diggs to Plaintiff Wayne noting concern for Plaintiff Stephanie,[7] (2) a print out of the "Manage

---

[1] Plaintiffs' Complaint, CPU4-18-000574, ¶8 (Jan. 19, 2018).
[2] *Id.* at ¶9.
[3] *Id.* at ¶10.
[4] Plaintiff's Complaint, CPU4-18-000587, ¶7 (Jan. 19, 2018).
[5] *Id.* at ¶ 8.
[6] The Court considered all exhibits submitted into evidence and afforded them their appropriate weight.
[7] Plaintiffs' Exhibit 1C (" (1/2) Happy New Year Wayne. I am writing to you because I am very concerned about my daughter Stephanie [sic] she has been involved in some destructive behaviors [sic] th (2/2) is is just to remind you of your responsibility to look out for you[r] wife [sic] mental and physical health. I want you to know you will be held accountable.").

Blocking" settings of Facebook, Inc.'s website,[8] (3) a second print out of the "Manage Blocking" settings of Facebook, Inc.'s website,[9] and (4) a print out of the "Who viewed your profile" webpage on Plaintiff Stephanie's "Profile" on LinkedIn Corporation's website.[10] Defendant Diggs did not proffer any exhibits at trial. Defendant Jackson submitted the following relevant exhibits into evidence: (1) text messages from Plaintiff Stephanie to Defendant Jackson evidencing contact extending from July 9, 2017 to August 25, 2017,[11] and (2) an August 21, 2017 text message chain between Plaintiff Stephanie and Defendant Jackson where Defendant Jackson advises her mother that she "need[s] help."[12] This is the Court's final decision after consideration of the pleadings, oral and documentary evidence submitted at trial, arguments made at trial, and the applicable law.

In case #000574, Plaintiffs failed to prove by a preponderance of the evidence that Defendant Diggs defamed Plaintiff Stephanie or caused Plaintiff Wayne to suffer emotional distress. Defamation—written and spoken—requires proof of the following elements: " '(1) the defamatory character of the communication; (2) publication; (3) that the communication refers to the plaintiff; (4) the third party's understanding of the communication's defamatory

---

[8] Plaintiffs' Exhibit 1D (indicating that Defendant Diggs had been unblocked twice).
[9] Plaintiffs' Exhibit 1E (indicating that Defendant Diggs "Liked" something on Plaintiff Stephanie's page on the Facebook, Inc.'s website).
[10] Plaintiffs' Exhibit 1H (indicating that Defendant Diggs viewed Plaintiff Stephanie's LinkedIn profile within the past ninety days).
[11] Defendant Jackson's Exhibit 1.
[12] Defendant Jackson's Exhibit 5.

character; and (5) injury.' "[13] The Delaware Superior Court has stated the following regarding a court's determination of whether the first element has been satisfied:

> In determining whether a statement is capable of defamatory meaning, the Supreme Court of Delaware in *Spence v. Funk* looked to two similar, but slightly different, definitions of defamation:
> - "That which tends to injure the reputation in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him."
> - "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."
>
> Beginning with these fundamental definitions, this Court in *Q–Tone Broadcasting, Co. v. Musicradio of Maryland, Inc.*, adopted New Jersey's three-part test on determining a statement's capability of defamatory meaning. The Supreme Court of New Jersey, in *Ward v. Zelikovsky*, found that courts should consider the content, verifiability, and context of the allegedly defamatory statement(s). "In its analysis of the content of an allegedly defamatory statement, the Court must look to the 'fair and natural meaning which will be given it by reasonable persons of ordinary intelligence.' "[14]

The text message at issue that Defendant Diggs sent to Plaintiff Wayne states:

> (1/2) Happy New Year Wayne. I am writing to you because I am very concerned about my daughter Stephanie [sic] she has been involved in some destructive behaviors [sic] th (2/2) is is just to remind you of your responsibility to look out for you[r] wife [sic] mental and physical health. I want you to know you will be held accountable.[15]

---

[13] *Better v. Mitchell*, 2004 WL 3312524, at *5 (Del. Com. Pl. Oct. 5, 2004) (quoting *Read v. Carpenter*, Del. Super., No. 95C-03-171, Quillen, J. (June 8, 1995) (Letter Op.)).

[14] *Images Hair Solutions Med. Cntr. v. Fox News Network, LLC*, 2013 WL 6917138, at *3 (Del. Super. Dec. 20, 2013) (footnotes omitted).

[15] Plaintiff's Exhibit 1C.

A "fair and natural interpretation" of this text message is not one of defamation, but a message of concern. Indeed, the context of the exchange involves an anxious mother texting her son-in-law regarding her daughter's wellbeing. In fact, the message does not even accuse Plaintiff Stephanie of possessing a "mental health illness."[16] Hence, I find that Plaintiffs have failed to satisfy their burden regarding the first element of defamation.[17]

Regarding the tort of intentional infliction of emotional distress ("IIED"),[18] the Delaware Superior Court has noted:

> In Delaware, the elements of the tort of intentional infliction of emotional distress ("IIED") are defined by Section 46 of the Restatement (Second) of Torts. According to the Restatement, an IIED claim arises when "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another [. . .] ." Extreme and outrageous conduct is that which "exceeds the bounds of decency and is regarded as intolerable in a civilized community." The Court considers the Restatement's comment as to what conduct might be sufficiently extreme and outrageous to warrant IIED liability:
>
>> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of

---

[16] *Contra.* Plaintiffs' Complaint, CPU4-18-000574, ¶7 (Jan. 19, 2018).

[17] To the extent Plaintiffs claim secondary defamatory statements, the Court finds these claims lack merit and/or are unsupported by the record.

[18] Plaintiffs claimed reckless behavior on the part of Defendant Diggs in causing Plaintiff Wayne's emotional distress. Plaintiffs' Complaint, CPU4-18-000574, ¶8 (Jan. 19, 2018).

> the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'[19]

The text message at issue certainly does not meet the criteria for "extreme and outrageous" conduct. Defendant Diggs' concerned text message cannot be regarded as traversing "beyond all possible bounds of decency" by any stretch of the imagination. Therefore, I find that Plaintiffs have failed to satisfy their burden regarding the first element of IIED.

Regarding case #000587, Plaintiff Stephanie has not proven by a preponderance of the evidence that Defendant Jackson defamed her. While Plaintiff Stephanie failed to produce the complained of text message at trial where Defendant Jackson accused her of possessing a "mental health issue," Defendant agreed that she had shared a text message with a family member that "It seems [like] Plaintiff may have one."[20] Defendant Jackson noted that she sent the text during a discussion regarding Plaintiff Stephanie's (assumed) odd behavior in other text message communications. Again, I do not find Defendant Jackson's statement to be defamatory based on its context and lack of "verifiability."[21] At worst, Defendant Jackson's

---

[19] *Spence v. Cherian*, 135 A.3d 1282, 1288-89 (Del. Super. 2016) (footnotes omitted).

[20] In Defendant Jackson's response to Plaintiff Stephanie's question whether Defendant had ever sent a text message to Plaintiff or another family member accusing Plaintiff of having a "mental health issue," Defendant agreed that she had sent a text stating that Plaintiff "may have one." Based on the form of the question and answer, it is unclear what exactly was written.

[21] *Images Hair Solutions Med. Cntr.*, 2013 WL 6917138, at *3 ("Next, the Court must look to the verifiability of the statements, which will generally dispose of defamation claims arising from the expression of mere opinions.").

6

expression is merely exasperated opinion.[22] Thus, I find that Plaintiff Stephanie has failed to satisfy her burden regarding the first element of defamation.[23]

As the preliminary elements of defamation and IIED have not been established, the Court finds it unnecessary to proceed further.[24] For the foregoing reasons, I find that Plaintiff Stephanie and Plaintiff Wayne have failed to prove by a preponderance of the evidence their claims against Defendant Diggs.

ACCORDINGLY, I find for Defendant Diggs in case# CPU4-18-000574.

SECONDLY, I find that Plaintiff Stephanie has failed to prove by a preponderance of the evidence her claims against Defendant Jackson. Therefore, I find for Defendant Jackson in case# CPU4-18-000587.

**IT IS SO ORDERED.**

_____
Alex J. Smalls,
Chief Judge

---

[22] *See Doe v. Cahill*, 884 A.2d 451, 463 (Del. 2005) ("In deciding whether or not a statement is defamatory we determine, '*first*, whether alleged defamatory statements are expressions of fact or protected expressions of opinion; and [*second*], whether the challenged statements are capable of a defamatory meaning.' " (*quoting Riley v. Moyed*, 529 A.2d 248, 251 (Del. 1987))).
[23] To the extent Plaintiff claims secondary defamatory statements, the Court finds these claims lack merit and/or are unsupported by the record.
[24] *See Doe*, 884 A.2d at 467.